```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:02cr296-1 |
| | ) | |
| RUSSELL EDWARD JOHNSON | ) | |

**MEMORANDUM OPINION AND ORDER (Amended)**

Before the court is *pro se* Defendant Russell Edward Johnson's motion for compassionate release (Doc. 124) as supplemented (Doc. 125). The Government filed a response opposing Johnson's motion. (Doc. 131.) Johnson filed a reply. (Doc. 132.) For the reasons stated herein, the motion will be denied.[1]

**I. BACKGROUND**

In January 2003, Johnson was convicted by a jury on all counts of a six-count superseding indictment for possession of a firearm by a felon (Counts One and Four), assault on federal agents with a deadly weapon (Count Two), brandishing a firearm during a crime of violence (Count Three), possession with intent to distribute marijuana (Count Five), and possession of firearms in furtherance of a drug trafficking crime (Count Six).[2] (Doc. 48.) He was

---

[1] Also pending before the court is Johnson's motion for a sentence reduction brought under 28 U.S.C. § 2255 (Doc. 106) as supplemented. (Docs. 114, 117-119.) The Government moved to stay that motion pending the Fourth Circuit's resolution of the panel decision in United States v. Gary, 954 F.3d 194 (4th Cir. 2020) (Doc. 126), and this court granted that motion. The present Order addresses solely Johnson's motion for compassionate release.

[2] The evidence indicated that Johnson's offenses were serious and violent. As detailed in the Presentence Report, Federal agents went to

sentenced to 24 months of imprisonment on Counts One, Two, Four, and Five, concurrently; five years of imprisonment on Count Three, to run consecutively to the sentence imposed on Counts One, Two, Four, and Five; and 25 years of imprisonment on Count Six, to run consecutively to the sentences imposed on Counts One through Five. (Id.)  Johnson filed an unsuccessful appeal and has filed multiple motions in the years since.  (Docs. 49, 80, 89, 90, 92, 106, 111.) He is currently incarcerated at FCI Coleman Medium and has an expected release date of October 18, 2030.  (Doc. 131 at 4.)

**II. ANALYSIS**

Johnson's motion for compassionate release fundamentally makes two distinct arguments.  In his initial motion, Johnson argues that the First Step Act's change in law limiting the sentence for a second or additional 18 U.S.C. § 924(c) conviction in an indictment to consecutive mandatory minimums of 5 years (instead of 25 years for a second conviction in Johnson's case)

---

where Johnson worked with his father to execute a search warrant, and Johnson removed a handgun from his pants and attempted to point it at the agents.  (Doc. 95 ¶ 7.)  Even after being restrained, Johnson continued to threaten the agents.  (Id. ¶ 8.)  Upon executing the search warrant, the agents seized a loaded .38 caliber Smith & Wesson revolver that Johnson had brandished at the agents, two assault rifles, two shotguns, six handguns, blasting caps, a pipe bomb, 2,693 rounds of ammunition, and five baggies of marijuana. (Id. ¶ 9).  Officers later searched Johnson's home and seized 4,000 rounds of assorted ammunition, 20 loaded handguns, one shotgun, eight rifles, three assault rifles, five blasting caps, three pounds of marijuana, and other drug paraphernalia. (Id. ¶ 11.)  Johnson had previously been convicted of felony possession with intent to sell and deliver a controlled substance, felony manufacturing marijuana, felony possession of a controlled substance, and felony maintaining a dwelling for the purpose of keeping a controlled substance.  (Id. ¶ 6.)

2

constitutes an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). (Doc. 124.) In his reply brief, he focuses on his underlying medical conditions and the risk of COVID-19 as extraordinary and compelling reasons. (Doc. 132.)

"Federal law has long authorized courts to reduce sentences of federal prisoners facing extraordinary health conditions," but prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, district courts could grant such reductions only upon a motion by the Director of the Bureau of Prisons ("BOP") under 18 U.S.C. § 3582(c)(1). United States v. Beck, 425 F. Supp. 3d 573, 577-78 (M.D.N.C. 2019). However, Congress amended § 3582(c)(1) when it passed the First Step Act. Pertinent here, the First Step Act added a provision to § 3582(c)(1) that allows a defendant to bring a motion for compassionate release directly in a district court after either "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Once this exhaustion requirement is met, a defendant must either (1) demonstrate "extraordinary and compelling reasons" for a compassionate release, or (2) be at least 70 years old, have served 30 years in prison, and have the Director of BOP determine

3

that the defendant is not a danger to the public.  Id. Additionally, a court, in considering a reduction in sentence pursuant to § 3582(c)(1)(A), must consult the sentencing factors set forth in 18 U.S.C. § 3553(a) and may grant the reduction only if it is "consistent with [the] applicable policy statements" issued by the United States Sentencing Commission.  Id.  This includes United States Sentencing Guideline § 1B1.13.  Section 1B1.13 essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant not be "a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2); see also Beck, 425 F. Supp. 3d at 578.  The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release, including when an inmate is suffering from a debilitating medical condition that has "substantially diminishe[d] the ability of the [inmate] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13 application note 1(A)(ii).

For over a year, the Sentencing Commission has lacked a quorum and thus has not updated its policy statements on compassionate release since the First Step Act was signed into law in December 2018.  Beck, 425 F. Supp. 3d at 579 n.7.  Thus, the current phrasing of § 1B1.13 addresses scenarios in which the BOP Director files a motion for compassionate release, but not situations in which an

4

inmate files a similar motion under § 3582. As such, § 1B1.13 provides helpful guidance when considering a motion filed by an inmate, but "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." Id. at 579. Therefore, when considering the merits of an inmate's § 3582(c)(1)(A) motion for compassionate release, the court must consider the § 3553(a) factors but is not limited by the policy statements outlined in § 1B1.13.

### A. Section 924(c)

Johnson's primary argument is that the First Step Act's limitations as to stacking convictions under 18 U.S.C. § 924(c) constitute extraordinary and compelling reasons for compassionate release. As with any claim, Johnson bears the burden of proving that he has exhausted his remedies. United States v. Morrison, No. 5:07-CR-00050, 2020 WL 4016253, at *2 (W.D.N.C. July 16, 2020). Most courts conclude that § 3582(c) is non-jurisdictional, such that the Government can thereby waive, forfeit, or abandon its right to assert the defense of failure to exhaust. See United States v. Hampton, No. 507CR00033, 2020 WL 4674112, at *1 (W.D.N.C. Aug. 12, 2020); United States v. Russo, 454 F. Supp. 3d 270, 274-78 (S.D.N.Y. 2020). This is the case here, as the Government does not raise exhaustion. Further, it appears in any event that Johnson has exhausted his administrative remedies as to this

5

ground.  He filed his request raising his § 924(c) argument with the BOP on January 13, 2020.  (Doc. 124-2.)  This request was denied on January 27, 2020.  (Doc. 124-3.)  Johnson then appealed using a BP-9 Request for Administrative Remedy on February 7, 2020 (Doc. 124-5), and it was denied on February 21, 2020 (Doc. 124-7).  Johnson brought the present motion on April 2, 2020, more than 30 days after his warden received his initial request.  (Doc 124.)  While the text of § 3582(c) is not clear, it is now settled that a defendant must either "fully exhaust[] all administrative rights to appeal" or show "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  See 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 833-34 (6th Cir. 2020).  Accordingly, Johnson has exhausted as to his § 924(c) argument.

As to the merits of his § 924(c) stacking argument, Johnson argues that "[t]he First Step Act authorized district court judges to correct or modify an unjust sentence."  (Doc. 124 at 1.)  He contends that because the First Step Act directs multiple convictions of § 924(c) charged in the same indictment to carry consecutive mandatory minimum of 5 years, he is eligible for release because his sentence should have been 12 years (of which his two § 924(c) convictions would total 10 years), not 32 years (of which his § 924(c) convictions totaled 30 years (5 years plus 25 years)).  (Id. at 4-5.)  The Government responds that the First

6

Step Act did not authorize the relief that Johnson seeks and that to grant it would contravene the Act.  (Doc. 131 at 5-14.)

Some district courts have held that the First Step Act authorizes a district court to find that the Act's change in the stacking of § 924(c) convictions constitutes an extraordinary and compelling reason under § 3582(c).  See, e.g., United States v. Redd, 444 F. Supp. 3d 717 (E.D. Va. 2020); United States v. Decator, 452 F. Supp. 3d 320 (D. Md. 2020); United States v. Urkevich, No. 8:03CR37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019).  The reasoning appears to be two-fold.  First, these courts conclude that, in the First Step Act, Congress removed the BOP's exclusive authority to determine what qualifies as an extraordinary and compelling reason, granting the court independent authority to do so.  Redd, 444 F. Supp. 3d at 725.  This is not controversial.  See Beck, 425 F. Supp. 3d at 579 ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").  Second, using this authority, these courts conclude that the disparity resulting from the changes in § 924(c) sentencing, either alone or in conjunction with other factors, qualifies as an extraordinary and compelling reason to grant a compassionate release.  Redd, 444 F. Supp. 3d at 722-24.

It is this second step that is problematic.  By doing so,

7

Case 1:02-cr-00296-TDS   Document 134   Filed 11/13/20   Page 7 of 19

these decisions effectively use § 3582(c)(1)(A) to work an end-run around both the laws passed by Congress and the Sentencing Guidelines. This is especially the case with § 924(c), because Congress expressly declined to make the First Step Act's sentencing changes in § 924(c) retroactive. Instead, it provided: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5221-22; see United States v. Jordan, 952 F.3d 160, 174 (4th Cir. 2020) (concluding, in line with other circuits, that the First Step Act's changes to § 924(c) are not retroactive). Johnson cannot use the "extraordinary and compelling" language from § 3582(a)(1)(A) to effectuate what Congress expressly chose not to do when it revised § 924(c).

The courts that permit the § 924(c) sentencing changes to constitute an extraordinary and compelling reason for compassionate release address the retroactivity issue by concluding that Congress merely did not want the sentences of all defendants sentenced under the old provision to be reviewed but had no problem with individualized assessments of particular defendants. See United States v. O'Bryan, No. 96-10076-03, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020) ("[I]t is not unreasonable for Congress to conclude that not all defendants convicted under

8

§ 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis." (citation omitted)).  This argument is unpersuasive.  It seems unlikely that in the very same Act in which Congress elected not to make the sentence reductions in § 924(c) retroactive it permitted courts to do that very thing in a more obscure way via changes to the compassionate release process of § 3582(c).  Congress is expert at writing laws and does not "hide elephants in mouseholes."  See Whitman v. Am. Trucking Associations, 531 U.S. 457, 468 (2001).

To be sure, in the First Step Act Congress expanded the role of the courts in the compassionate release process.  A defendant can now directly petition the court for relief (after exhaustion), and the court has an independent basis for concluding when there are extraordinary and compelling reasons for compassionate release.  See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 application note 1.  But, particularly in the context of § 924(c), it is highly unlikely that this expanded role included taking steps that Congress itself chose not to take.  As the Government correctly notes, to hold otherwise would permit any defendant to move the court for compassionate release based on any change in law that applies to that defendant.  See Doc. 131 at 13; see also United States v. Arojojoye, 806 F. App'x 475, 477 (7th Cir. 2020) (describing as "dubious" an argument that sentencing disparities

9

can constitute extraordinary and compelling reasons and noting that 28 U.S.C. § 2255 presents a better vehicle for such a motion).[3] To do so would effectively infringe on Congress's right to determine which changes in statutory law are to be deemed retroactive and would vitiate the limitations Congress otherwise wrote into 28 U.S.C. § 2255.

Johnson's argument is also inconsistent with the Sentencing Guidelines. Congress still mandates that any compassionate release reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C § 3582(c)(1)(A). The Guidelines' policy statement defines "extraordinary and compelling reasons" as focusing on the defendant's medical conditions, age, or family circumstances. See U.S.S.G. § 1B1.13 application note 1. There is the "catch-all" provision of application note 1(D),[4] but there is no basis to say that a change in applicable imprisonment terms, such as the changes in § 924(c),

---

[3] Indeed, for many of the courts that have held that the change in § 924(c) sentencing constitutes an extraordinary and compelling reason for compassionate release, there is nothing in the logic of the opinions that would limit it to § 924(c) convictions. Under this logic, anytime Congress changes a law that would affect in some way a defendant's sentence, it would serve as a possible ground for compassionate release. There is no indication that Congress intended the compassionate release process to become a vehicle to provide for such sentence reductions.

[4] U.S.S.G. § 1B1.13 application note 1(D) provides: "Other Reasons.-- As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).".

10

is in any way consistent with similar justifications enumerated in the Guidelines.  See, e.g., United States v. Fox, No. 2:14CR03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) (noting that "those other extraordinary and compelling reasons should be comparable or analogous to what the [Sentencing] Commission has already articulated as criteria for compassionate release" and denying a motion based on sentencing disparity).  As the Government points out, the applicable policy statements issued by the United States Sentencing Commission do not contemplate any basis for compassionate release based on reevaluation of the severity of the original sentence.  (Doc. 131 at 9.)

There is a further problem with Johnson's argument.  The current statutory scheme respects the continuing role of the BOP in the compassionate release process while also respecting the roles of Congress and the Sentencing Commission in sentencing.  The Director of the BOP has authority to bring a motion on behalf of a defendant.  See § 3582(c)(1)(A).  The Sentencing Commission contemplates that the Director will have made a preliminary determination that extraordinary and compelling reasons exist for release before doing so.  See U.S.S.G. § 1B1.13 application note 4 ("The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1.").  Moreover, the actual text of the "catch-all" provision states that it is the

11

Director who will decide what other reasons, in addition to those enumerated, qualify as extraordinary and compelling. See id. at note 1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." (emphasis added)). But it strains reason to conclude that Congress intended for the BOP -- a branch of the U.S. Department of Justice -- to consider sentencing disparities as an extraordinary and compelling reason for release. See Mistretta v. United States, 488 U.S. 361 (1989).[5] The consideration of sentencing disparities is a quintessential judicial function. See, e.g., 18 U.S.C. § 3553(a)(6). If the First Step Act were deemed to have authorized consideration of such statutory disparities for compassionate release, the necessary question that follows is: what is the proper sentencing range for such a defendant?

The First Step Act only changes § 924(c)'s stacking of

---

[5] Mistretta upheld the constitutionality of the U.S. Sentencing Commission, an independent agency housed in the Judicial Branch. While acknowledging that U.S. sentencing is not the "exclusive constitutional province of any one Branch," the Court noted that "Congress' decision to place the Commission within the Judicial Branch reflected Congress' strong feeling that sentencing has been and should remain primarily a judicial function." Id. at 390 (quotations omitted). Further, the Mistretta Court suggested that "had Congress decided to confer responsibility for promulgating sentencing guidelines on the Executive Branch, we might face the constitutional questions whether Congress unconstitutionally had assigned judicial responsibilities to the Executive or unconstitutionally had united the power to prosecute and the power to sentence within one Branch." Id. at 391 n.17.

12

mandatory minimums; it did not limit the maximum sentences available. Moreover, a sentencing court is always required to take into account the overall sentence, especially when a mandatory consecutive sentence on a § 924(c) count is involved. See Dean v. United States, 137 S. Ct. 1170 (2017) (sentencing court permitted to consider the mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense). Thus, the potential changes to a sentence caused by the First Step Act's revisions to § 924(c) are not isolated to that count of conviction. Because § 3582(c)(1)(i) does not address mere inequity, but is rather a vehicle for early release, the Director of BOP would have to determine not only that the § 924(c) convictions imposed are unjust, but that the term of imprisonment already served by a defendant is "sufficient but not greater than necessary" in light of the First Step Act's changes. There is no indication that Congress intended for the BOP to wade into these difficult sentencing decisions, but that is what Johnson invites.

Of course, as noted above, the Sentencing Commission's policy statements have not been updated since the First Step Act was enacted, so the language is, in a sense, "outdated," and the courts have independent authority to assess whether extraordinary and compelling reasons warrant a sentence reduction. See Beck, 425 F. Supp. 3d at 579. Just as there is no indication that Congress intended to grant BOP the authority to make such sentencing

13

decisions, there is nothing to indicate that Congress intended to expand the courts' authority to do so. Given the joint role of the courts and the BOP in the compassionate release process, presumably both are applying the same grounds.

This is not to say that Johnson's argument that the prior stacking rules of § 924(c) were harsh, even unduly so in some cases, is without merit. But there are other tools more suitable to address this concern -- § 2255 being the primary tool for prisoners in federal custody to attack their sentences, which includes procedural safeguards not found in the compassionate release process, such as bars to successive motions and time limits. See 28 U.S.C. § 2255(f), (h). Because Congress knows how to say what it means, these other tools are due the respect Congress intended them.

For the above reasons, this court concludes that the sentencing reductions effectuated by the First Step Act in 18 U.S.C. § 924(c) do not constitute an extraordinary and compelling reason for a sentence reduction.[6] In so doing, the court expresses

---

[6] United States v. Chambers, 956 F.3d 667 (4th Cir. 2020), is not to the contrary. There, the defendant moved for a sentence reduction under the provision of the First Step Act that retroactively reduced the sentencing disparity between crack and powder cocaine. Id. at 670. The district court resentenced the defendant accordingly, but in doing so did not consider the intervening change in the career-offender designation brought about by United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). Id. The Fourth Circuit in Chambers vacated and remanded with instructions for the district court to recalculate Chambers' Guidelines range without the career-offender enhancement. Id. at 675. Chambers stands for the proposition that "any Guidelines error deemed

14

no view on the role such a change in law might play in consideration of the factors under § 3553(a) once extraordinary and compelling reasons are demonstrated.

**B. Medical Conditions**

Johnson first noted his general concern about contracting COVID-19 in his initial motion. (Doc. 124.) In its response, the Government not only responded to that contention but affirmatively addressed his medical conditions and records. (Doc. 131 at 15-16.) Thus, while this ground does not appear to have been raised with the BOP as required by § 3582(c)(1)(A)(i), the Government has waived any objection to Johnson's failure to exhaust that ground. See Hampton, 2020 WL 4674112, at *1; Russo, 454 F. Supp. 3d at 274-78.

The court is attentive to Johnson's fear concerning COVID-19 at Coleman Medium. (Doc. 125 at 2.) However, a general fear of contracting COVID-19 does not constitute an extraordinary and

---

retroactive . . . must be corrected in a First Step Act resentencing." Id. at 668. Johnson's motion is distinguishable. For one, while both the career-offender change in law in Simmons and the crack-powder disparity in the First Step Act were retroactive, the stacking of § 924(c) convictions is not. Moreover, Johnson's motion for a sentence reduction is brought under the compassionate release provision of § 3582(c)(1)(A), not § 3582(c)(1)(B), as in Chambers. Section (c)(1)(A) comes with many of the same "strictures" as § 3582(c)(2), which the Chambers court saw as a "sharp contrast" to Chambers' First Step Act motion under § 3582(c)(1)(B). See id. at 671. Specifically, while a (c)(1)(B) motion merely states that a court "may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute," both compassionate release motions under (c)(1)(A) and motions under (c)(2) permit a sentence reduction only after consideration of the § 3553(a) factors and if the reduction is consistent with the Sentencing Commission's policy statements. See 18 U.S.C. §3582(c).

15

compelling reason for compassionate release.  See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons.").  Further, as to the risk of COVID-19, as of November 2, 2020, FCI Coleman Medium had 36 confirmed COVID-19 cases -- 33 BOP staff and three inmates.  See https://www.bop.gov/coronavirus/ (last accessed Nov. 2, 2020).  As to the inmates specifically, given a total inmate population of 1,364, the current infection rate represents 0.2 percent of the population.

As to Johnson's specific medical conditions, he argues in his reply that he has "calculus of kidney [kidney stones], hypertension, and is obese with a BMI of 31."  (Doc. 132 at 3.)  A review of his medical records generally confirms these conditions. (Doc. 131-1.)  According to the Centers for Disease Control and Prevention ("CDC"), a BMI of 30 or higher is identified as increasing the risk for severe illness from COVID-19 while hypertension may increase such a risk.  See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

16

(last accessed Nov. 2, 2020).  Johnson is 45 years old.  (Doc. 132 at 3.)

Even if Johnson has a medical condition that might make him more vulnerable to COVID-19 should he contract it, he has not shown that he is being insufficiently treated at FCI Coleman Medium. Obesity is not by itself a chronic condition, one "from which [the defendant] is not expected to recover."  See U.S.S.G. § 1B1.13 application note 1(A)(ii).  Other courts that have considered the issue have held that obesity alone is insufficient to constitute "extraordinary and compelling reasons."  See e.g., United States v. Votaw, No. 2:11-CR-00514, 2020 WL 3868468, at *2 (E.D. Cal. July 9, 2020) (BMI of 37.9 not sufficient for relief); United States v. Edison, No. CR 12-225, 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (BMI of 35.4 "fails to meet the demanding standard for compassionate release"); United States v. Whitsell, No. 09-CR-20236, 2020 WL 3639590, at *4 (E.D. Mich. July 6, 2020) ("Defendant's obesity by itself is not sufficient to warrant early release under the compassionate release standard.").  And Johnson's medical records show that he is currently receiving medication for his hypertension.  (Doc. 131-1 at 1.)  Thus, Johnson has not provided evidence that he lacks "the ability . . . to provide self-care within the environment of a correctional

17

facility" as to his obesity and hypertension. See U.S.S.G. § 1B1.13 application note 1(A)(ii).[7]

The court is sensitive to Johnson's medical conditions. Nevertheless, given his current status, the relative lack of COVID-19 at FCI Coleman Medium especially among the inmate population, and the availability of treatment for his medical conditions at the facility, the court finds that no extraordinary or compelling reasons support his compassionate release.

Having concluded that Johnson has not established extraordinary and compelling reasons, the court need not reach the Government's alternative argument that Johnson's early release would not be appropriate in light of the sentencing factors under 18 U.S.C. § 3553(a). (Doc. 131 at 16-18.)

## C. Home Confinement

Finally, to the extent that Johnson asks this court to order home confinement, that request will be denied. "The BOP has exclusive authority to determine [the] defendant's place of

---

[7] The court notes that, generally, neither obesity nor high blood pressure, alone or combined, constitutes extraordinary and compelling medical reasons absent additional serious medical concerns or age. See, e.g., United States v. Handy, No. 3:10-CR-128-8, 2020 WL 2487371, at *1 (D. Conn. May 14, 2020) (53-year-old with congestive heart failure, obesity, and high blood pressure and receiving immunosuppressant steroid injections); United States v. Howard, No. 4:15-CR-00018, 2020 WL 2200855, at *3 (E.D.N.C. May 6, 2020) (52-year-old with "numerous physical and medical conditions" to include chronic obstructive pulmonary disease, Type II diabetes, obesity, kidney disease, hernias, and open wounds on his legs); United States v. Ardila, No. 3:03-CR-264, 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) (71-year-old with diabetes, cardiovascular disease, hypertension, asthma, and obesity).

imprisonment, including home confinement, and the BOP's placement decisions are not reviewable by any court." United States v. Gray, NO. 4:12-CR-54-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (internal quotation marks omitted). As a result, the court is without jurisdiction to order BOP to place defendant on home confinement. Id. That is, it could not do so if it wanted to. Furthermore, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), does not provide this court with authority to order home confinement. Gray, 2020 WL 1943476, at *3. Therefore, Defendant's request for home confinement is denied.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Johnson's motion for compassionate release (Doc. 124) is DENIED to the extent it is predicated on changes to 18 U.S.C. § 924(c) and is DENIED WITHOUT PREJUDICE to the extent it is predicated on his medical condition.

　　　　　　　　　　　　　　　　　　/s/ Thomas D. Schroeder
　　　　　　　　　　　　　　　　　United States District Judge

November 13, 2020

19

Case 1:02-cr-00296-TDS   Document 134   Filed 11/13/20   Page 19 of 19